UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:19-CV-22-PPS-JEM |
| DJURO DJANKOVICH and MLADEN DJANKOVICH, | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff, Shelter Mutual Insurance Company, filed a motion for summary judgment in this declaratory action. [DE 37.]  In response to my order asking Defendants Djuro Djankovich and Mladen Djankovich to respond, Defendants stated the "Motion for Summary Judgment is unopposed and that they have no objection to the Court summarily ruling on the motion based on the filings to date." [DE 41 at 1.] Shelter's evidence establishes, as a matter of law, that the insurance policies at issue do not provide coverage for the claims asserted in the underlying lawsuit, Shelter is not obligated to defend Djuro Djankovich in the underlying suit, and Shelter is not legally obligated to indemnify Djuro Djankovich against the underlying lawsuit.  Therefore, summary judgment will be granted in Plaintiff's favor.

**Background**

In support of its motion, Shelter has offered facts they say are not or cannot be genuinely disputed, supporting each by a citation to particular parts of the evidence of record, as required by Rule 56(c)(1)(A).  [*See* Statement of Material Facts, DE 37-2.]  Because the Djankovichs failed to file any opposition to the motion, I consider these properly supported facts to be undisputed for purposes of this motion.  Fed. R. Civ. P. 56(e)(2).

The underlying lawsuit in this case was filed on July 14, 2017, by James and Amy Wiersema, in Porter County, Indiana Superior Court.  [DE 37-2 ¶ 1.]  In that underlying lawsuit, the Wiersemas allege that Djuro and Mladen Djankovich (father and son, respectively), sold a home located at 146 Springwood Drive, Hebron, Indiana, to James Wiersema.  [*Id.* ¶ 2.]  They further allege that the Djankovichs completed a Seller's Disclosure form, and they stated there were no leaks in the roof, no water and/or moisture problems with the home, and there was not more than one layer of shingles on the roof.  [*Id.* ¶¶ 4-5.]  After the sale of the house on August 7, 2015, the Wiersemas discovered multiple moisture problems in the home, the roof had multiple leaks, there was rotten wood in the roof, there was mold in the home, and the roof was comprised of four different sets of shingles. [*Id.* ¶ 7.]

In the underlying lawsuit, the Wiersemas allege the Djankovichs knew the roof of the home leaked and was damaged, that there was mold in the home, and that they concealed those conditions from them.  [*Id.* ¶ 8.]  The underlying lawsuit alleges seven

2

claims against the Djankovichs, including that they had actual knowledge that the roof leaked and there were water problems and they made fraudulent misrepresentations in the Sales Disclosure; they intentionally concealed the presence of water damage and mold and committed actual and constructive fraud; through their concealment, they breached the Real Estate Purchase Agreement; they made knowing and intentional false statements with the intent to obtain property (the purchase price) and committed criminal deception; they were unjustly enriched due to their fraudulent conduct; the mold has caused personal injury to James Wiersema; and the Wiersemas have lost the consortium of each other due to the Djankovichs' behavior. [*Id.* ¶¶ 9-15.]

Djuro Djankovich submitted a claim to Shelter for a defense and potential indemnity against the underlying lawsuit. [*Id.* ¶ 16.] Shelter issued Homeowners' Insurance Policy No. 13-71-4845312-1 with policy periods of March 16, 2014 - September 16, 2014; September 16, 2014 - March 16, 2015; and March 25, 2015 - September 16, 2015 to Djuro and Joanne Djankovich for the house at 146 Springwood in Hebron. [*Id.* ¶ 17.] Shelter filed a complaint in this case seeking a judicial declaration that Djuro Djankovich is not entitled to a defense or indemnity for the underlying lawsuit under his insurance policies for a number of reasons – including that the allegations against the Djankovichs in the underlying lawsuit do not constitute accidental conduct, and are therefore not covered by the policies.

## Discussion

Let's start with some legal basics. The interpretation of an insurance policy, like other contracts, is typically a question of law that I can resolve on summary judgment. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000). When interpreting an insurance policy, my goal is to ascertain and enforce the parties' intent as reflected in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Am. States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991). However, ambiguous terms in the contract are to be construed against the insurer, especially where the policy excludes coverage. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994).

An insurance company's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.,* 665 N.E.2d 891, 892 (Ind. 1996). An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy. *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). "[T]here is essentially only one standard - that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Id.* Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured. *See Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638-39 (N.D. Ind. 1995) (if there is a possibility of coverage, the insurer is obligated to defend; however, "when the underlying factual basis of the complaint,

4

even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend."). In addition, an insurer must defend an action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy. *See Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). So "[i]f the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed." *Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2010) (citation omitted).

But on the other hand, "where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend." *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007) (citation omitted). In other words, if the pleadings demonstrate that "a claim is clearly excluded under the policy, then no defense is required." *Id.*

The first place to look when trying to determine the insurer's duty to defend is the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007); *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005). In addition, I can also consider extrinsic evidence in assessing an insurer's duty to defend. *See Continental Ins. Co. v. George J. Beemsterboer, Inc.*, 148 F.Supp.3d 770, 781-82 (N.D. Ind. 2015) (analyzing relevant case law and finding

5

it appropriate to consider extrinsic evidence in assessing an insurer's duty to defend); *Selective Ins. Co. of S.C. v. Erie Ins. Exch.*, 14 N.E.3d 105, 112-13 (Ind. Ct. App. 2014).

With these legal tenets in mind, let's turn to the analysis of the facts in this case. The personal liability coverage of the policies issued by Shelter provide that Shelter shall pay on behalf of an insured "all sums that such insured becomes legally obligated to pay, *if those damages result from an accident.*" [DE 37-2 ¶ 20 (emphasis added).] The word "accident" is clearly defined (and the Djankovichs don't argue that it is ambiguous) in the Shelter policies as an action or occurrence, or series of actions or occurrences, that started abruptly, during the policy period, and directly resulted in "bodily injury" or "property damage." [*Id.* ¶ 22.] The Shelter policies explicitly state that an "accident" does not mean:

> (a) An action or occurrence that any insured intended to result in bodily injury, or property damage, of any type; (b) An action or occurrence that is intended by any insured, if a reasonable individual would expect it to result in bodily injury, or property damage, of any type; or (c) an intentional action by any person that does not immediately result in bodily injury or property damage, but ultimately does result in such because of its repetition or the repetition of similar actions.

*Id.*[1]

---

[1] This policy language appears in the Shelter policies with effective dates of March 16, 2014 - September 16, 2014, and September 16, 2015 - March 16, 2015. The Shelter policy with an effective date of March 25, 2015 - September 16, 2015, contains similar policy language wherein Shelter agrees to pay damages on behalf of an insured. Damages is defined as the "money an insured is legally obligated to pay another person for bodily injury, or property damage, caused by an accident." [DE 37-2 ¶ 24.] Accident is defined the same as set forth above.

Here, the underlying lawsuit alleges intentional and purposeful conduct by the Djankovichs. Count I states a clam for the Djankovichs' actual fraud in allegedly making misrepresentations in the Seller's Disclosure. Count II is for their actual and constructive fraud in allegedly having actively taken steps to conceal the presence of water damage, stains, and mold in the home. Count III is for breach of contract and alleges the Djankovichs breached the Real Estate Purchase Agreement by intentionally concealing water damage, stains, and mold in the home. Count VII alleges the Djankovichs committed the crime of deception in selling the home. Count IX alleges the Djankovichs were unjustly enriched as a result of their fraudulent conduct. Count X alleges that by fraudulently concealing the condition of the home, the Djankovichs caused personal injury to the Wiersemas. And Count XI alleges the Djankovichs, by all of their alleged conduct which was intentional, impaired the comfort and happiness of the Wiersemas. [*See* DE 1-2, underlying lawsuit complaint.][2] All of the conduct alleged by the underlying complaint that the Djankovichs committed is intentional, not accidental, and is therefore not subject to coverage under the Shelter policies.

Multiple cases support this result. A claim against a seller of real estate for fraudulent misrepresentation requires that the seller "had actual knowledge" of the defects; "showing that an owner failed to disclose a defect of which he should have

---

[2] The remaining counts in the underlying complaint contain allegations against another defendant, Eenigenburg Roofing, Inc. All of the allegations in the underlying complaint against the Djankovichs, as enumerated above, allege intentional and fraudulent conduct.

known is not sufficient." *Hays v. Wise*, 19 N.E.3d 358, 362 (Ind. Ct. App. 2014). Similarly, a claim for fraudulent misrepresentation requires as one of its elements that the misrepresentation was made with knowledge or reckless ignorance of its falseness. *Johnson v. Wysocki*, 990 N.E.2d 456, 460-61 (Ind. 2013). Claims like the ones alleged by the Wiersemas in the underlying complaint do not qualify as "accidents" under insurance policies like the Shelter policies. *See, e.g., Westfield Ins. Co. v. Barick*, No. 2:06-CV-288-PRC, 2008 WL 938330, at *7 (N.D. Ind. Apr. 3, 2008) (finding claims for fraudulent inducement to contract did not allege an insured "occurrence," which was defined as an accident); *Jim Barna Log Sys. Midwest, Inc. v. General Cas. Inc. Co. of Wisconsin*, 791 N.E.2d 816, 830 (Ind. Ct. App. 2003) (allegations of fraudulent misrepresentation did not constitute an accident under the policy because it was not an unexpected happening without intention or design); *Cincinnati Ins. Co. v. Taylor-Morley, Inc.*, 556 F.Supp.2d 908, 918 (S.D. Ill. 2008) ("the various forms of fraud alleged in the underlying suit involve knowing and intentional conduct, none of which constitutes an accident as needed to qualify as an 'occurrence' and thereby trigger coverage under the Policies.").

In sum, the allegations in the underlying complaint that the Djankovichs took measures to intentionally defraud and actively conceal defects in their home are purposeful actions and cannot qualify as an "accident" under the Shelter policies. Therefore, there is no coverage for the claims in the underlying lawsuit.

**Conclusion**

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment [DE 37] is GRANTED and it is determined as a matter of law that: (1) the Shelter policies issued to Djuro Djankovich do not provide coverage for the claims asserted in the lawsuit entitled *James Wiersema and Amy Wiersema v. Djuro Djankovich, Mladen Djankovich, and Eenigenburg Roofing, Inc.* (the underlying lawsuit); (2) Shelter is not legally obligated to defend Djuro Djankovich against the underlying lawsuit; and (3) Shelter is not legally obligated to indemnify Djuro Djankovich against the underlying lawsuit. The Clerk is ORDERED to enter judgment in favor of Plaintiff, Shelter Mutual Insurance Company, and against Defendants, Djuro Djankovich and Mladen Djankovich.  Finally, the Clerk is ORDERED to CLOSE this case.

SO ORDERED.

ENTERED: July 31, 2020.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT